KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
HEATHER L. PICKERELL, ESQ., STATE BAR NO. 346211
HPICKERELL@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiffs MATHANGI
ARULPRAGASAM p/k/a M.I.A. and
NEET TOURING LLP,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MATHANGI ARULPRAGASAM p/k/a M.I.A., an individual, and NEET TOURING LLP, a limited liability partnership,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT RAMON SEGURO MESCUDI p/k/a KID CUDI, an individual,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>1. **INDUCING BREACH OF CONTRACT**<br>2. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3046.062/3253148.1

**INTRODUCTION**

1.     Plaintiff Mathangi Arulpragasam, professionally known as M.I.A., is one of the most critically acclaimed and politically fearless musicians of her generation. As a former refugee who fled genocide in Sri Lanka, M.I.A. has spent decades speaking out about immigration, war, and genocide.

2.     Defendant Scott Ramon Seguro Mescudi, professionally known as Kid Cudi, knew exactly who M.I.A. was when he invited her to join *Kid Cudi Presents: The Rebel Ragers Tour* ("Tour"). He knew her politics. He knew her music. He knew she would not stay silent on stage. He invited her anyways.

3.     M.I.A. and her company, Plaintiff Neet Touring LLP ("Company") entered into an agreement ("Agreement") with the Tour's promoter, Live Nation Worldwide, Inc. ("Live Nation"). Live Nation agreed to pay Plaintiffs a guarantee of $2,805,000 ("Guarantee"). Critically, the Agreement grants the Company sole and exclusive creative control over M.I.A.'s performances. So, Live Nation agreed to pay M.I.A. over $2.8 million regardless of what she said on stage. That was the deal.

4.     On the Tour, M.I.A. spoke—as she always speaks—about the issues that matter to her. She called for a free Palestine. She condemned U.S. Immigration and Customs Enforcement ("ICE"). She referred to herself, her touring team, and members of the audience as "illegal" immigrants. She questioned why she had been "cancelled" as a "Republican voting American."

5.     Kid Cudi directed Live Nation to fire M.I.A. In a public statement, Kid Cudi insisted that M.I.A. "understood" that she could not say anything "offensive" on the Tour, and he portrayed himself as an aggrieved headliner forced to protect his fans from an out-of-control support act.

6.     Here is the truth. M.I.A. was terminated to generate publicity for the Tour, which has struggled with ticket sales. She was contractually allowed to say whatever she wanted on stage. M.I.A. now holds Kid Cudi accountable for his bad faith destruction of her contractual rights, business opportunities, and reputation.

KING, HOLMES, PATERNO & SORIANO, LLP

## PARTIES

7.    Plaintiff Mathangi Arulpragasam, professionally known as M.I.A., resides in London, United Kingdom.

8.    Plaintiff Neet Touring LLP is a limited liability partnership formed and based in London, United Kingdom.

9.    Defendant Scott Ramon Seguro Mescudi, professionally known as Kid Cudi, resides in Los Angeles, California.

## JURISDICTION

10.    This Court has jurisdiction over this dispute under 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiffs are citizens of the United Kingdom, and Kid Cudi is a citizen of California.

## VENUE

11.    Venue is proper under 28 U.S.C. § 1391(b)(1) because Kid Cudi resides in this judicial district.

12.    Venue is alternatively proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

13.    Should this Court decide that venue is not proper under 28 U.S.C. § 1391(b)(1) and (b)(2), venue is proper under 28 U.S.C. § 1391(b)(3) because Kid Cudi is subject to this Court's personal jurisdiction in this judicial district.

## GENERAL ALLEGATIONS

14.    M.I.A. is a British-Sri Lankan rapper, singer, songwriter, producer, and activist. Her groundbreaking, era-defining music includes the worldwide hits *Paper Planes*, *Bad Girls*, *Bring the Noize*, and *Galang*. She has been nominated for an Academy Award and three Grammy Awards. In 2019, M.I.A. was appointed a Member of the Order of the British Empire for her services to music.

15.    M.I.A. has always been unapologetically political. She relentlessly

KING, HOLMES,
PATERNO &
SORIANO, LLP

3046.062/3253148.1                                    3

expresses her views on immigration, genocide, and war in her music, during her performances, in interviews, and on social media. She has described her family's experience fleeing the genocide of Tamils in Sri Lanka in several of her songs, including *Fire Fire*, *Born Free*, and *Arular*. She tackles the global refugee crisis in *Borders* and describes in *Illygirl* her own experience as a refugee navigating western institutions. She addresses the genocides in Palestine, Rwanda, Congo, and Darfur in *Illygirl*, *Sunshowers*, and *Jimmy*.

16.    In 2026, Kid Cudi selected M.I.A. to perform as a special guest at 33 shows for the Tour. He directed Live Nation to contract her for her services.

17.    So, Plaintiffs and Live Nation entered into the Agreement. Live Nation agreed to pay Plaintiffs a Guarantee of $2,805,000. The Agreement grants the Company sole, exclusive creative control over the production and presentation of M.I.A.'s performance. If Live Nation materially breaches the Agreement, Plaintiffs have the right to terminate the Agreement without performing any further obligations, retain any amounts paid by Live Nation, and receive prompt payment of the full Guarantee and "any additional compensation due" under the Agreement. The Agreement states that it is the sole agreement between Live Nation and Plaintiffs concerning the Tour and may not be amended except by a signed, written instrument.

18.    During her performances on the Tour, M.I.A. made comments that were consistent with her public persona and prior performances.

19.    During the Tour's second show in Albuquerque, New Mexico, M.I.A. proclaimed, "Free Palestine" and asked the audience to "make noise for Gaza."

20.    At the Tour's third show in Austin, Texas, M.I.A. said: "Do you want me to say fuck ICE? Everybody give me the middle finger then."

21.    At the Tour's fourth show in Dallas, Texas, she asked the audience to chant a lyric from *Illygirl*: "Illegal, fuck your law." She also made the following statements:

KING, HOLMES,
PATERNO &
SORIANO, LLP

3046.062/3253148.1                                    4

- "I've been cancelled for many things. I never thought I'd be cancelled for being a Republican voting American. So, I've come to meet you all in person. This is the 'allow me to reintroduce myself' tour."

- "We can do one more song . . . Can't do *Illygirl*, though some of you could be in the audience."

- "Alright, I am illegal. Half of my team are not here because they didn't get the visa, okay? I want you to know that. Alright, so don't listen to what the bots say on the internet, okay. . . . We should be above politics."

22.   After the Dallas show, Kid Cudi instructed Live Nation to terminate M.I.A. from the remaining 29 shows on the Tour. Live Nation did so. Shortly after, Kid Cudi posted this statement on social media:

> M.I.A. is no longer on this tour. I told my management to send a notice to her team before we started tour that I didnt want anything offensive at my shows, cuz I already knew what time it was, and I was assured things were understood. After the last couple shows, I've been flooded with messages from fans that were upset by her rants. This, to me, is very disappointing and I wont have someone on my tour making offensive remarks that upsets my fanbase. Thank you for understanding.

23.   Kid Cudi's statement is riddled with falsehoods. Before M.I.A. agreed to join the Tour, Kid Cudi was aware of M.I.A.'s politically vocal reputation and her stances on immigration and genocide. The only contract that governs M.I.A.'s performances on the Tour is the Agreement, which grants the Company full creative control. Kid Cudi's motivations are purely commercial. He has already been forced to cancel a Tour date due to low ticket sales. He has ridiculed and attempted to "cancel" M.I.A. to market the Tour and sell tickets.

24.   M.I.A. has incurred substantial damages and reputational harm due to Kid Cudi's directing Live Nation to fire her. Not only is she owed the full Guarantee, but she has also lost merchandise sales and VIP package sales from the remainder of the Tour. An offer for M.I.A. to perform at a private party for over $290,000 plus travel and accommodation was withdrawn. An offer for a

KING, HOLMES, PATERNO & SORIANO, LLP

3046.062/3253148.1                                                5

merchandise pop up in Los Angeles was rescinded. Discussions with a sync company over a potential licensing deal were terminated. M.I.A. and her son have received death threats.

## FIRST CLAIM FOR RELIEF

### (Inducing Breach of Contract)

25.    Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if restated here in full.

26.    The Agreement was a contract between Plaintiffs and Live Nation.

27.    Kid Cudi knew of the Agreement. On information and belief, as the headlining act of the Tour, Kid Cudi had a copy of the Agreement or knew of its terms.

28.    Kid Cudi intended to cause Live Nation to breach the Agreement. Kid Cudi instructed Live Nation to breach the Agreement to generate publicity and ticket sales for the Tour.

29.    Kid Cudi's conduct caused Live Nation to breach the Agreement. He directed Live Nation to terminate M.I.A. from the Tour. He caused Live Nation to fail to pay Plaintiffs the $2,805,000 Guarantee. He caused Live Nation to breach the Agreement's provision guaranteeing the Company full creative control of M.I.A.'s performance.

30.    Plaintiffs were harmed. Among other harms, Live Nation has failed to pay Plaintiffs the full Guarantee, and Plaintiffs have lost merchandise sales and VIP package sales from the remainder of the Tour.

31.    Kid Cudi's conduct was a substantial factor in causing Plaintiffs' harm. He instructed Live Nation to terminate the Agreement.

32.    Kid Cudi has acted with oppression, fraud, or malice. Plaintiffs are thus entitled to punitive damages.

KING, HOLMES,
PATERNO &
SORIANO, LLP

3046.062/3253148.1                                6

## SECOND CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

33. Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if restated here in full.

34. The Agreement was a contract between Plaintiffs and Live Nation.

35. Kid Cudi knew of the Agreement. On information and belief, as the headlining act of the Tour, Kid Cudi had a copy of the Agreement or knew of its terms.

36. Kid Cudi's conduct prevented performance of the Agreement. He directed Live Nation to terminate M.I.A. from the Tour. He caused Live Nation to fail to pay Plaintiffs the $2,805,000 Guarantee. He caused Live Nation to breach the Agreement's provision guaranteeing the Company full creative control of M.I.A.'s performance.

37. Kid Cudi intended to disrupt performance of the Agreement. Kid Cudi instructed Live Nation to breach the Agreement to generate publicity and ticket sales for the Tour.

38. Plaintiffs were harmed. Among other harms, Live Nation has failed to pay Plaintiffs the full Guarantee, and Plaintiffs have lost merchandise sales and VIP package sales from the remainder of the Tour.

39. Kid Cudi's conduct was a substantial factor in causing Plaintiffs' harm. He instructed Live Nation to terminate the Agreement.

40. Kid Cudi has acted with oppression, fraud, or malice. Plaintiffs are thus entitled to punitive damages.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Kid Cudi as follows:

1. For compensatory damages of an amount in excess of $75,000, according to proof.

2. For consequential and special damages according to proof.

KING, HOLMES,
PATERNO &
SORIANO, LLP

3046.062/3253148.1

7

3. For punitive damages according to proof.

4. For prejudgment interest.

5. For Plaintiffs' costs and attorney fees.

6. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

DATED: May 29, 2026    KING, HOLMES, PATERNO & SORIANO, LLP


By: _/s/ Howard E. King_

HOWARD E. KING
HEATHER L. PICKERELL
Attorneys for Plaintiffs MATHANGI ARULPRAGASAM p/k/a M.I.A. and NEET TOURING LLP